Carl Wescott
PO Box 190875
San Francisco, CA 94966
*in propria persona*
+1 415 335 5000




FILED

JUL -3 2018

U.S. BANKRUPTCY COURT
SANTA ROSA, CA

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISON

| | | |
|---|---|---|
| In Re: | ) | |
| Carl A. Wescott, | ) | Case Number 16-10975-AJ |
|     Debtor/Plaintiff | ) | Chapter 7 |
| v. | ) | |
| Monette Stephens | ) | **SWORN DECLARATION OF** |
| Livovich & Szuckso PC | ) | **CARL A. WESCOTT** |
| Law Offices of Terry Szuckso | ) | |
| Terry Szukcso, Esq. | ) | |
|     Defendants | ) | |

I, Carl A. Wescott first being duly sworn, affirm on oath:

1. I am the movant and debtor in the captioned case. I am fifty-one years old and if called upon to do so, I would testify competently as follows.

2. When I filed bankruptcy in this case, I noticed Mr. Szuckso as a scheduled creditor. I intended and expected that he would provide actual notice to Monette Stephens, my ex-wife, as I was constrained by injunction from communicating with her directly and preferred to err on the side of compliance with the injunction.

3. I interpreted the Order (as defined in my MPA) as imposing sanctions on me by reason of my putative acts of fiduciary breach (as detailed therein) and willful injury to Ms. Stephens and her property. I deny breaching my fiduciary duty and I deny willfully injuring Ms. Stephens or her property. At the hearing determining maintenance and support in October 2016, the trial judge, the Honorable Anne-Christine Massullo, showed no interest in my ability to pay any award and in fact refused to allow me to enter my tax returns into evidence.

4. Although the Judge appeared to accept Monette's perjurious testimony that I enjoyed an income of $100,000 per month, the Order awards sums that are plainly disproportionate to even such an extravagantly excessive income. The federal and state taxes on income of $100,000 per month would approximate $40,000. Yet, the Judge awarded $55,000 in combined maintenance and support plus $8,000 per month towards arrears, or more than $63,000 per month; required me to pay and repay Ms. Staphens approximately $6 million further and held me responsible for nearly $600,000 in legal fees. As of the date of the Order, $100,000 was approximately twenty times my *annual* income, as I had averaged under $400/month for over 10 years, but the most cursory financial analysis would have shown that even if the imputed figure had been correct, the financial burdens imposed by the court would have been entirely unsustainable.

5. Monette received a salary of approximately $200,000 per year in the first year of our courtship and marriage as an investment banker. I believe her salary is considerably higher today. Yet the Court did not undertake any analysis of her ability to pay attorney's fees. Clearly, on a salary of $200,000 per year, Monette had the ability to pay some quantum of fees. I have personal knowledge that Monette's lawyers were also paid by her ex-boyfriend Henry, by me (though summer 2014) and by my father Ward Wescott.

6. The payments made by Henry and by my father were intended as gifts to Monette. Yet the Court did not take into consideration Monette's resources either in terms of salary or gifts from benefactors.

7. I recently spoke to my father Ward Wescott and confirmed he had sent over $100,000 to Ms. Stephens in assisting with her legal bills. I had previously confirmed this in writing (email) many times prior.

8. In email with my father Ward Wescott he detailed the precise set of payments he made over one 6-month period, which totaled over $30,000.

9. My father wished to help Ms. Stephens with her bankruptcy legal costs in hopes that she would get a discharge. This would be good not only for Ms. Stephens but also for his three grandchildren by way of Ms. Stephens and me – his only grandchildren.

10. It is not my intention here to appeal the Court's ruling or even to criticize the Court. It is my intention to set out the reasons I believe the payments ordered, including the fee payments, were intended as sanctions rather than an equitable division of marital assets.

11. I reaffirm under oath that Mr. Szucsko has herded multiple sets of law firms to submit invoices of over $604,000 in connection with ongoing Family Law proceedings despite his knowledge of my discharge. Some of these bills are duplicative and fraudulent. Some were previously paid by me.

12. Ms. Stephens, Mr. Szucsko, and Mr. Szucsko's law firms violated my automatic stay prior, and now have violated my discharge on multiple occasions, including by attempting to collect discharged debt.

13. I also affirm, on oath, all statements made in my MPA regarding Mr. Szucsko's acts of litigation fraud and Monette's perjury.

FURTHER AFFIANT SAYETH NAUGHT

Signed under the penalties of perjury of the State of California June 29th, 2018.

RESPECTFULLY SUBMITTED.

Date: 6/29/2018

_____
Carl A. Wescott. *Pro Se*