Carl Wescott
PO Box 190875
San Francisco, CA 94966
*in propria persona*
+1 415 335 5000

UNITED STATES BANKRUPTCTY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISON

In Re:

| | | |
|---|---|---|
| Carl Alexander Wescott, | ) | Case Number 16-10975-AJ HLB |
| Debtor/Plaintiff | ) | Chapter 7 |
| v. | ) | **ORDER TO SHOW CAUSE FOR** |
| Monette Stephens | ) | **VIOLATION OF DISCHARGE** |
| Lvovich & Szuckso PC | ) | **INJUNCTION 11 USC 524(a)(2)** |
| Law Offices of Terry Szuckso | ) | |
| Terry Szukcso, Esq. | ) | |
| Defendants | ) | |

Debtor/Plaintiff Carl Wescott ("Debtor"), proceeding *pro se*, hereby complains of Defendants Monette Stephens ("Ms. Stephens"), Lvovich & Sczukcso PC ("L&S"), Law Offices of Terry Szuckso and Terry Szuckso, Esq. for violation of the Discharge Injunction he obtained in this case on February 14, 2017 and in support of his Petition, the Debtor offers this concise Memorandum of Points & Authorities.

As a threshold matter, the Debtor has not set a hearing date for this OSC as he believes that Northern California federal bankruptcy Courts move forward with OSCs when good cause appears and set an initial hearing date, as with Adversary Proceedings. The Debtor read Local Rules but could not confirm this belief.

1. Introduction

This Motion for an Order to Show Cause arises out of the Debtor's family law case in which he was Ordered to pay millions of dollars primarily for conduct that implicates 523 (a) (4) and 523 (a) (6) (e.g. breach of fiduciary duty and willful and malicious injury). Mr. Szuckso was noticed as a creditor and as attorney for the Debtor's ex-wife Monette Stephens. Despite this notice, he and Ms. Stephens failed to Object to the Debtor's discharge. Accordingly, to the extent that liabilities were imposed on the Debtor that fall within the ambit of 523 (a) (4) and 523 (a) (6) those liabilities were discharged on February 14, 2017. Yet, despite the Debtor's discharge, Mr. Szuckso, directly and on behalf of Ms. Stephens, has continued to attempt to collect discharged obligations in violation of 11 USC 524.

a.) Underlying Facts

The Debtor married Ms. Stephens on January 14, 2005 in Santa Barbara, California. The Debtor had three sons with Ms. Stephens: Alexander Georges Wescott, born October 12, 2005; Cyrus Mason Wescott; born February 15, 2008; and Darius Sebastian Wescott, born February 25, 2010.

At the time of the marriage, the Debtor was a successful international real estate investor and developer. The Debtor brought on the order 90%+ of the parties' assets to the marriage. Most of the Debtor's income at the inception of the parties' marriage came via capital gains, taxed at lower rates than the income earned by Ms. Stephens.

Ms. Stephens was the primary source of earned income in the marriage, as she had a highly paid job as an investment banker.

While the Debtor's deals and investments did very well for many years, after September 2008, Debtor and Ms. Stephens got caught in the credit crunch and as of August 2010, could no longer pay their mortgages or service their debt.

The Debtor was subsequently induced by attorney Michelle Harris ("Harris") and Ms. Stephens to sign and to exhaust the last of his borrowing capacity by paying outrageously excessive amounts of support to Ms. Stephens and fees to Harris. After Harris exhausted the Debtor's cash resources she engineered his eviction from the parties' properties leaving him homeless as of September 1st, 2014. Ms. Stephens directed and/or ratified the oppressive and deceptive actions of Harris.

Ms. Stephens discharged Harris and hired Mr. Szucsko in December 2014. Szuckso has represented Ms. Stephens since that time in family law court and others. On October 11th and October 13th, 2016, the parties had their marital dissolution trial. The Court verbally ordered the Debtor to pay Ms. Stephens' attorney fees on October 11th, 2016. At the trial, Ms. Stephens testified that she had paid about $600,000 in attorney fees. Mr. Szucsko delayed filing the written version of the order for the Court to sign for many months, but the family law Court signed the written form of that order in May 2017.

The Debtor filed his chapter 7 bankruptcy in October 2016, after the marital dissolution trial and Judge Massullo's order. In all candor, one of the specific purposes of his filing was to discharge the attorney fees as well as many many millions of dollars the Court ordered beyond Child Support and Spousal Support. Mr. Szucsko was notified and scheduled, as was his law firm. Because the Debtor was under a restraining order and prohibited from direct communication with Ms. Stephens, he notified Mr. Szuckso as creditor and as Ms. Stephens' attorney. <u>In any event, whether Szucsko engages in jesuitical casuistry about whether he received notice as a creditor or attorney for Ms. Stephens, Ms. Stephens had actual notice of the Debtor's</u>

3

Bankruptcy filing in ample time to Object and failed to do so.

No Objection was filed to the Debtor's Discharge by either Mr. Szucsko or Ms. Stephens. That Discharge was granted by this Honorable Court on February 14, 2017 and Mr. Szucsko would have been provided with notice of the Plaintiff's Discharge at or about that date. Further details are provided in Exhibit A, Debtor's Sworn Declaration.

2. The Discharged Obligations Were For Fiduciary Breach & Willful & Malicious Injury and Did Not Reflect a Routine Division of Property or Award of Maintenance

Mr. Szucsko and Ms. Stephens committed fraud upon the family law court that the Plaintiff will detail later in a more appropriate forum. The result of that scheme was to saddle the Debtor with outrageously disproportionate burdens in order to ensure that Ms. Stephens would receive the lion's share of the income when Debtor fortunes inevitably revived. For example, Ms. Stephens testified under oath that the Plaintiff was earning $100,000 per month when Ms. Stephens knew he had averaged under $400/month of income for over 10 years. The result of the parties' fraud upon the family law Court are that the Plaintiff has obligations of over $15 million to Ms. Stephens while he is homeless and surviving with the help of public assistance (aka EBT/food stamps).

Mr. Szucsko convinced the Family Law Court to render such a lopsided judgment without a detailed or even cursory analysis of the relative ability of the parties to support themselves or pay attorney's fees.

The parties' family law Judgment (paragraph 4) reads as follows:

> Petitioner [Debtor] has perpetrated extensive domestic violence against Respondent including physical violence, and years of mental harassment and abuse, and has used the legal process to continue to harass Respondent.

Paragraph 5 of the Judgment reads as follows:

> Petitioner breached his fiduciary duties to the community and to Respondent during the marriage via his domestic violence against Respondent and <u>through his extensive and elaborate financial schemes, which have left the Parties' finances in a ruinous state and impeded Respondent's ability to support herself and her children.</u> (Emphasis added).

Paragraph 12 of the Judgment reads as follows:

> Petitioner is to reimburse respondent forthwith in the amount of $1,443,540, which sum represents Respondent's separate property misappropriated during their marriage and is due forthwith' such separate property to be reimbursed includes $585,000 from Respondent's SEI investment account, $104,000 from Respondent's Fidelity Investment account, $158,540 from Respondent's Montecito Bank and Trust account and $596,000 representing the second loan on the property at 3910 carol Avenue in Santa Barbara California ("the SB Property").

The harm described in paragraph 4 would come within the ambit of 11 USC 523 (c) (6) and for malicious injury and the harm described in paragraphs 5 and 12 would come within the ambit of 11 USC (4) for fraud or fiduciary breach.

Per paragraph 8 of the Judgment, Ms. Stephens is awarded $29,000 per month in maintenance for a period of 10 years (and tens of thousands of dollars in child support per month, too).

Paragraph 16 of the Judgment reads, in its entirety:

> Respondent is awarded attorney's and expert fees and costs <u>incurred</u> in the above-captioned family law proceedings and in the bankruptcy proceedings initiated by the parties in 2012, subject to proof of such fees and costs to be submitted to the Court by Respondent. (Emphasis added).

Paragraph 16 does not discuss the relatively financial means and needs of the parties. This is significant because FAM 230 (a) (2) *requires* such an analysis. The Judgment awarded Ms. Stephens many millions of dollars in back payments and collateral payments as well as maintenance and child support going forward in excess of $50,000 per month. The Court also

5

awarded Ms. Stephens another $4 million or so to pay down or pay current a mortgage on a house that she lives in but does not own (benefiting a third party unrelated to the parties, Homer Ventures, LLC).

Absent discussion of the parties' needs and means, the law in this Circuit is that an award of fees is presumptively dischargeable. *In Re Gibson*, 103 BR 218 (9th Cir. BAP 1989). Indeed, FAM 271 provides in relevant part:

> (a) Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. **An award of attorney's fees and costs pursuant to this section is in the nature of a sanction.** In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed. In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award.

Bankruptcy Courts have exclusive jurisdiction to determine dischargeability of debts under 523 (a) (4) and (a) (6). *In Re Eber*, 687 F.3rd 1123, 1128 (9th Cir. 2012). Sanctions (including fees) are dischargeable if they do not reflect conduct violative of *523 Kaplan v. Wasko*, Case No. CC-12-1118-PaMkBe (9th Cir. B.A.P. Mar. 6, 2013) (unpublished). Yet, even if sanctions do reflect conduct violative of 523, the lack of a timely Objection will result in a discharge. *Anwar v. Johnson*, 720 F.3rd 1183 (9th Cir. 2013). Either way, the Debtor's Obligations would have been discharged on February 14, 2017 by Order of this Court. Accordingly, the award of fees in paragraph 16 is dischargeable and was discharged for at least 3 reasons:

(a) It was not in the nature of alimony or support under the rubric of *Gibson*;
(b) It was procured by a series of extrinsic frauds on the Family Law Court including, specifically, the fraud that Ms. Stephens was responsible for fees that were actually either gratuitously paid by third parties or paid by the Debtor in funds that were converted by Ms. Stephens;
(c) The award was made in consideration of malicious injuries allegedly inflicted by the Debtor and in consideration of alleged fiduciary breaches by the Debtor that *would have been non-dischargeable* had timely Objections been made by Szuckso a scheduled creditor. As no such Objections were made, the obligations were discharged per Bankruptcy Rule 4007. *Anwar v. Johnson*, 720 F.3rd 1183 (9th Cir. 2013). In the case of Ms. Stephens, she was aware, of a practical matter of the pendency of the Debtor's Bankruptcy in time to file an Objection and failed to do so. Her failure to Object is likewise fatal to her claim now. *Burgraff v. Munion* 487 BR 599 (BAP 6th Cir. 2013).

In sum and substance, the intent of much of the Family Court award – but at *least* the award of attorney's fees and the award of $1,443,540 was to impose restitution and penalties for conduct that was discharged by this Court without Objection. In other words, the awards were not part of a normal division of marital assets; indeed the awards expressly referenced the Debtor's alleged acts of malicious injury and misappropriation. In the hearing on the Debtor's income, the Court refused to allow the Debtor to admit copies of his tax returns. The overriding intent of the Family Law Court was to punish culpable conduct rather than take into account the actual needs and abilities of the parties to meet obligations. The Debtor asks this Court to look to the substance rather than to the form of this ruling in determining the scope of the applicability of the Debtor's Discharge.

### 3. Szuckso, on Behalf of Ms. Stephens, Wrongfully Attempted to Collect the Discharged Obligations

Mr. Terry Szuckso filed in the Debtor's Family Law Case on or about May 14, 2018, attorney fees of approximately $600,000 attempting to collect on behalf of Ms. Stephens and 8 other attorneys.

The Debtor has received invoices for approximately $604,000 in services that were obligations discharged by this Court as of February 14, 2017.

The attorneys working with Szucsko were, unlike Szucsko, not scheduled in the Debtor's Bankruptcy though the Debtor has separately providing those eight attorneys and their firms with notice of his Discharge from this Court.

Mr. Szucsko as authorized and/or ratified by Ms. Stephens has willfully attempted to collect discharged debts within the meaning of 11 USC 524 (a) (2).

The Debtor has struggled to find permanent housing and to reestablish himself professionally. His efforts have been disrupted and he has incurred severe emotional distress upon being confronted with $604,000 in debts that are respectively: (a) fraudulent as not having been "incurred" by Ms. Stephens; (b) excessive and unreasonable; (c) the result of a series of extrinsic frauds on the Family Law Court by Ms. Stephens and her lawyer Szucsko and; (d) presumptively discharged by this Court.

This sequence of events is bringing up in the Debtor's mind a whole series of frauds upon various Courts by Ms. Stephens and also her attorneys Ms. Harris, Ms. Gropper-Nelson, and Mr. Szucsko, among others. Part of the fraud upon the Court was that the Debtor was abusive, and this fraud has resulted in him not currently seeing his children. The Debtor is currently enduring many sleepless nights reliving the nightmares caused by Ms. Harris, Ms. Stephens, Ms. Gropper-

8

Nelson, and Mr. Szucsko as they rendered him homeless, took all his possessions, lied to multiple courts, and interfered with his parental rights (including denying many dozens of Court-ordered visitations).

The Debtor has the utmost confidence in the ability of this Court to follow the law in this case despite the inflammatory language in the Order that was procured – essentially unopposed – by Mr. Szuckso in contravention of the policy set forth in FAM 230 (ensuring that both sides are represented by counsel). Yet it would be natural for the Court to view breach of fiduciary duty and allegations of abuse with repugnance. The Debtor emphasizes his vehement denial of the allegations of fiduciary breach and abuse and affirms that such allegations were never litigated on anything like a level playing field. The failure of Mr. Szucsko and Ms. Stephens, to properly object to discharge in this Court, reflects an aversion to competing on such a level playing field. That salient failure justifies the discharge of the debts arising from the Order (e.g. both fees and restitution).

4. Conclusion

Clearly, the award in this case was not made in accordance with normal Family Law requirements: it was sought and obtained as a sanction for conduct that implicated 11 USC 523 (4) and (6) rather than as a financial settlement determined after a detailed review of the needs and means of the parties.

Having obtained such a sanction, it was incumbent upon Mr. Szuckso as a creditor and as attorney for Ms. Stephens, to file timely objection to dischargeability. It is at least possible that Mr. Szuckso would have prevailed if he had objected, though the Debtor would have vigorously argued that a fraud had been perpetrated on the Family Law court. However, Mr. Szuckso did not object. Ms. Stephens, despite her notice did not object. *Burgraff v. Munion Supra.*

<u>As a result of this waiver and neglect, the Debtor's debts to Mr. Szucsko and Ms. Stephens (other than child support and spousal support) were in fact discharged and Mr. Szucsko's many recent attempts to collect – on his own behalf and Ms. Stephens's – violate the discharge injunction.</u>

Accordingly, the Debtor prays for entry of an Order:

(a) Affirming and decreeing that these categories of debts (including all debt Debtor has to Stephens from the marital dissolution order other than Child Support and Spousal Support) are among those discharged in 2017.

(b) Affirming and decreeing that the attorney fee debt to Mr. Szucsko and Ms. Stephens and to Mr. Szucsko's law firm from the marital dissolution order were fully discharged in 2017.

(c) Awarding the Debtor damages proximately caused by the Defendants' breach of his automatic stay including lost income, lost business opportunity, damage to reputation and emotional distress;

(d) Imposing punitive or exemplary damages on the Defendants in an amount sufficient to punish and deter them from future violations of Bankruptcy Court Orders and federal law and;

(e) Awarding him such other or further relief as this Court deems just.

RESPECTFULLY SUBMITTED.            July 9th, 2018

_____
Carl A. Wescott. *Pro Se*

Carl Wescott
PO Box 190875
San Francisco, CA 94966
*in propria persona*
+1 415 335 5000



UNITED STATES BANKRUPTCTY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISON

In Re:

Carl A. Wescott,　　　　　　　　　　)　Case Number 16-10975-AJ

　　　　Debtor/Plaintiff　　　　　　)　Chapter 7

　　　　v.　　　　　　　　　　　　　)

Monette Stephens　　　　　　　　　)　**SWORN DECLARATION OF**

Lvovich & Szuckso PC　　　　　　　)　**CARL A. WESCOTT**

Law Offices of Terry Szuckso　　　)

Terry Szukcso, Esq.　　　　　　　　)

　　　　Defendants　　　　　　　　　)

I, Carl A. Wescott first being duly sworn, affirm on oath:

1. I am the movant and debtor in the captioned case. I am fifty-one years old and if called upon to do so, I would testify competently as follows.

2. When I filed bankruptcy in this case, I noticed Mr. Szuckso as well as his law firm as a scheduled creditor. I intended and expected that he would provide actual notice to Monette Stephens, my ex-wife, as I was constrained by injunction from communicating with her directly and preferred to err on the side of compliance with the injunction.

3. I interpreted the Order (as defined in my MPA) as imposing sanctions on me by reason of my putative acts of fiduciary breach (as detailed therein) and willful injury to Ms. Stephens and her property. I deny breaching my fiduciary duty and I deny willfully injuring Ms. Stephens or her property. At the hearing determining maintenance and support in October 2016, the trial judge, the Honorable Anne-Christine Massullo, showed no interest in my ability to pay any award and in fact refused to allow me to enter my tax returns into evidence.

4. Although the Honorable Judge Anne-Christine Massullo appeared to accept Ms. Stephens' perjurious testimony that I enjoyed an income of $100,000 per month, the Order awards sums that are plainly disproportionate to even such an extravagantly excessive income. The federal and state taxes on income of $100,000 per month would approximate $40,000. Yet, Judge Massullo awarded $55,000 in combined maintenance and support plus $8,000 per month towards arrears, or more than $63,000 per month; required me to pay and repay Ms. Stephens approximately $6 million further and held me responsible for nearly $600,000 in legal fees. As of the date of the Order, $100,000 was approximately twenty times my *annual* income, as I had averaged under $400/month for over 10 years, but the most cursory financial analysis would have shown that even if the imputed figure had been correct, the financial burdens imposed by the court would have been entirely unsustainable.

5. Ms. Stephens received a salary of approximately $200,000 per year in the first year of our courtship and marriage as an investment banker. I believe her salary is considerably higher today. Yet the Court did not undertake any analysis of her ability to pay attorney's fees. Clearly, on a salary of $200,000 per year, Ms. Stephens had the ability to pay some quantum of fees. I have personal knowledge that Monette's lawyers were also paid by her

2

ex-boyfriend Henry, by me (though summer 2014) and by my father Ward Wescott. The exact amounts of Henry's payments are not known to me and thus I will couch this as upon information and belief.

6. The payments made by Henry and by my father were intended as gifts to Ms. Stephens. Yet the Court did not take into consideration Ms. Stephens' resources either in terms of salary or gifts from benefactors.

7. I believe that Henry, for example, paid all of Ms. Stephens' bill for Mr. Szucsko and his law firm. I believe that Henry paid all of Gary Kaplan's bill, which is good as Mr. Kaplan bills at almost $1000/hour. I believe those payments were gifts. No loans from Henry were listed on Ms. Stephens's financial disclosures. I'm glad Mr. Kaplan was paid as he is an excellent attorney and he was instrumental in Ms. Stephens getting her discharge.

8. My father also asserts that his payments were gifts, and he has provided a 6 digit amount to Ms. Stephens. No loans from my father, Ward Wescott, were listed in Ms. Stephens' financial disclosures, so that is consistent with my father's view.

9. I recently spoke to my father, Ward Wescott, and confirmed he had sent over $100,000 to Ms. Stephens in assisting with her legal bills. I had previously confirmed this in writing (email) many times prior.

10. In email with my father, Ward Wescott, he detailed the precise set of payments he made over one 6-month period, which totaled over $30,000.

11. My father wished to help Ms. Stephens with her bankruptcy legal costs in hopes that she would get a discharge. This would be good not only for Ms. Stephens but also for his three grandchildren by way of Ms. Stephens and me – his only grandchildren.

12. It is not my intention here to appeal the family law Court's ruling or even to criticize the

3

Court. It is my intention to set out the reasons I believe the payments ordered, including the fee payments, were intended as sanctions rather than an equitable division of marital assets.

13. I reaffirm under oath that Mr. Szucsko has herded multiple sets of law firms to submit invoices of over $604,000 in connection with ongoing Family Law proceedings despite his knowledge of my discharge. Some of these bills are duplicative and fraudulent. For example, I paid Ms. Barbara Smart's full bill of $2500 directly in cash. However, Mr. Szucsko is now invoicing me $5,000, twice her bill that I already paid.

14. The great majority of the attorneys were previously paid by me (though not the great majority of the monies as LVS has invoiced hundreds of thousands of dollars and Gary Kaplan also had a significant bill). I did not pay any monies to Mr. Kaplan or LVS, nor did I provide any monies to Ms. Stephens. All of the other attorneys were partially or completely paid in full by me, in some cases directly, and in many cases via monies to Ms. Stephens.

15. In any case, this particular fraud by Mr. Szucsko and Ms. Stephens is mostly irrelevant in the context of this Order to Show Cause as Ms. Stephens, Mr. Szucsko, and many other attorneys are violating my order of discharge.

16. Ms. Stephens, Mr. Szucsko, and Mr. Szucsko's law firms violated my automatic stay prior, and now have violated my discharge on multiple occasions, including by attempting to collect discharged debt.

17. Mr. Szucsko handed me a Request for Order and billing statements of close to $600,000 in mid-May, and I'm also receiving many letters and some rather unfriendly emails from Ms. Sheila Gropper-Nelson, as well as numerous communications about these attorneys bills from Mr. Szucsko's office.

18. We also had and have family law prove-up hearings on June 21st and July 10th where Ms. Stephens and Mr Szucsko refuse to provide any detail on their records for where the payments for $604,000 came from. I have pointed out the massive fraud and perjury but have also asked the family law court for a continuance so that this Honorable Court's Order to Show Cause can have preliminary proceedings and ultimately go to trial.

19. I hope and believe that this Court will issue a clear ruling that all aspects of my family law judgment other than Child Support and Spousal Support have been discharged. I was ordered to pay over $8 million in Child Support and Spousal Support while homeless and now on food stamps, so between that and her own income Ms. Stephens will apparently survive. Ms. Stephens and I no longer speak, but I would like to support my children as best I can.

20. The silver lining in all of this is that the Debtor is getting a great legal education in various Courts.

21. I also affirm, on oath, all statements made in my MPA and elsewhere regarding Mr. Szucsko's acts of litigation fraud, Mr. Szucsko's subornation or perjury and Ms. Stephens' perjury.

FURTHER AFFIANT SAYETH NAUGHT

Signed under the penalties of perjury of the State of California July 9th, 2018.

RESPECTFULLY SUBMITTED.

_____
Carl A. Wescott. *Pro Se*